**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
  *kevin@kjclawgroup.com*
W. Blair Castle (SBN 354085)
  *blair@kjclawgroup.com*
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA  90212
Telephone: (310) 861-7797

*Attorneys for Defendant*
*Crain Communications, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| VIVEK SHAH,<br><br>    Plaintiff,<br><br>v.<br><br>CRAIN COMMUNICATIONS, INC.,<br><br>    Defendant. | Case No. 2:26-cv-03070-RGK-AGR<br><br>*Assigned to Hon. R. Gary Klausner*<br><br>**DEFENDANT's NOTICE OF AND MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(1) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Filed Concurrently:<br><br>   1.  Declaration of Kevin J. Cole; and<br>   2.  [Proposed] Order<br><br>Date:        August 3, 2026<br>Time:        9:00 a.m.<br>Courtroom:  850, 8th Floor<br><br>Complaint Filed:  March 18, 2026<br>Trial Date:      Not Set |

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on August 3, 2026, at 9:00 a.m., or on such other date and time convenient to and ordered by the Court, in Courtroom 850 of the Edward R. Roybal Federal Building and United States Courthouse, located at 255 East Temple Street, Los Angeles, CA, 90012, the Honorable R. Gary Klausner presiding, Defendant Crain Communications, Inc. ("Defendant" or "Crain") by and through its attorneys of record, will and hereby does move to dismiss Plaintiff's First Amended Complaint ("FAC") in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(2) & (b)(6) because: (a) Plaintiff lacks Article III standing because he does not allege any actual, cognizable injury in fact resulting from the purported conduct at issue; and (b) Plaintiff's claim for violation of California's Invasion of Privacy Act ("CIPA") (Cal. Penal Code § 631(a)) and his claim for "intrusion upon seclusion" fail to state plausible claims on their face. Specifically:

*First*, Plaintiff lacks Article III standing to sue because he does not allege a concrete injury in fact. Both of Plaintiff's claims implicate purported privacy interests that he alleges were intruded upon. However, the facts alleged in his FAC show that the "content" he searched for on Defendant's website—and which he claims were provided to third parties in violation of a state privacy statutory scheme and a common law invasion of seclusion claim—consist entirely of generic and common information which courts have routinely held do not implicate any protectible privacy interest that creates a concrete injury-in-fact. Likewise, the other supposed privacy information he alleges was collected consists of tracking-type metadata that is regularly collected from users of the internet and which courts have also held do not implicate any privacy interests. Because no privacy interest has been violated, Plaintiff does not have an injury sufficient to provide him Article III standing to sue.

*Second*, Plaintiff's Complaint fails to state a proper claim upon which relief can be granted. Under California's Invasion of Privacy Act (here, Cal. Penal Code § 631(a)), Plaintiff must allege that protected "content" of his communication was transmitted to third

2

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

parties; generic search terms such as those entered by Plaintiff are insufficient, as they merely constitute a means of navigating Defendant's website, not any legitimate "communication" that Plaintiff intended to convey to anyone else. In addition, to state a claim for "Intrusion upon Seclusion," Plaintiff must allege that the information gathered is of the type that has been historically deemed outrageous or shocking to the conscience. Generic search terms about companies and their figures do not satisfy this standard. Nor does the collection of internet user "metadata" type information that Plaintiff has also alleged.

This Motion is made following the conference of counsel under L.R. 7-3, which took place on June 29, 2026, wherein the parties were unable to reach an agreement as to Defendant's Motion and determined that the Court's intervention was necessary. Declaration of Kevin J. Cole ("Cole Decl.") ¶¶ 3–4.

DATED:  July 6, 2026

**KJC LAW GROUP, A.P.C.**

By:  */s/ Kevin J. Cole*
Kevin J. Cole, Esq.

*Attorneys for Defendant*
*Crain Communications, Inc.*

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................7

II.  BACKGROUND .................................................................................................8

III. ARGUMENT ......................................................................................................8

A.  Plaintiff's Fails to Allege an Actual Concrete Injury Sufficient to Establish Article III Standing. ....................................................................................................8

1.  Generic Search Terms About Public Companies and Figures Do Not Implicate a Protected Privacy Interest. ...................................................................................10

2.  The hypothetical association of the generic search terms with Plaintiff does not alter the conclusion that he lacks standing................................................................14

B.  Plaintiff Fails to State any Plausible Claim...........................................................18

1.  Generic Search Queries Divorced of Meaning or Communicative Expression Lack the Statutorily Required "Contents or Meaning" to Violate CIPA Section 631(a). ............................................................................................................18

2.  Plaintiff's common law claim for intrusion upon seclusion fails as a matter of law because the alleged tracking is not "highly offensive." ......................................21

IV.  CONCLUSION..................................................................................................23

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)................................................................17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)...............................................17

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023).................11

*Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193 (N.D. Cal.
    Apr. 9, 2025)........................................................................................................15

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010).....................8

*Crano v. Sojern*, No. 3:25-CV-02600-JSC, 2026 WL 1670136 (N.D. Cal. June 9, 2026).
    ......................................................................................................................12, 15

*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.),* 750 F.3d 1098, 1107 (9th
    Cir. 2014)............................................................................................................17

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021)...........................19

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022).............................21

*Heiting v. Taro Pharms. USA, Inc.,* 709 F. Supp. 3d 1007, 1017 (C.D. Cal. 2023). ........17

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) ...........................................21

*In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014) .................21

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012).........................22

*In re Meta Healthcare Pixel Litig.,* 713 F. Supp. 3d 650 (N.D. Cal. 2024).....................21

*In re Pharmatrak,* 329 F.3d 9, 15, 18–19 (1st Cir.2003)................................................19

*In re USA Today Co., Inc. Internet Tracking Litig.*, No. 24-CV-05150-MMC, 2026 WL
    932655 (N.D. Cal. Apr. 6, 2026).............................................................................10

*In re Zynga Priv. Litig.,* 750 F.3d at 1107 (9th Cir. 2014) ............................................18

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 936 (N.D. Cal. 2023).................16

*Khamooshi v. Politico LLC*, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ......................10

*Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 862–63 (N.D. Cal. 2026)...............16

*Lightoller v. Jetblue Airways Corp.*, No. 23-cv-00361-H-KSC, 2023 WL 3963823 (S.D.
    Cal. June 12, 2023)...............................................................................................11

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012).....................................21

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)............................20

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................................8

Maghoney v. Dotdash Meredith Inc., No. 24-cv-01124, 2026 WL 211094 (N.D. Cal. May 11, 2026) ...........................................................................................................10, 12

*McClung v. AddShopper, Inc., No.* 23-cv-01996-VC, 2024 WL 189006, at *1 (N.D. Cal. Jan. 17, 2024)...............................................................................................17

*Popa v. Microsoft Corp.*, 153 F. 4th 784 (9th Cir. 2025) ..........................................passim

*Price v. Converse, Inc.*, 805 F. Supp. 3d 1102 (C.D. Cal. 2025) ....................................10

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019).....20

*Rodriguez v. Google LLC,* No. 20-CV-04688-RS, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021)...............................................................................................20

*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021)....................................17

*Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998).....................................20

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...........................................................8

*Torres v. Seatgeek, Inc.,* No. 25-CV-07118-LB, 2026 WL 1495202 (N.D. Cal. May 28, 2026 ........................................................................................................12, 15, 16

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).......................................................8

*Vivek Shah v. Talentbridge, Inc.*, No. 2:26-cv-00222-AH-SSCx, 2026 WL 1507888 (C.D. Cal. May 28, 2026) .....................................................................................13

*Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139 (E.D. Cal. 2025)...............15

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ..................18

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS & AUTHORITIES

### I.   INTRODUCTION

Plaintiff has amended his claims and now filed a First Amended Complaint ("FAC") after Defendant previously filed a Motion to Dismiss. Though Plaintiff has added a considerable amount of detail to his factual allegations (and added a second cause of action), the core, fundamental issues with Plaintiff's lawsuit remain: he does not have any legitimate claims because he has not suffered a cognizable injury-in-fact, and because he has not suffered an injury-in-fact, he lacks standing to sue under Article III of the Constitution.

Plaintiff asserts two privacy-based causes of action against Defendant Crain Communications, Inc. ("Defendant" or "Crain"), alleging that Plaintiff used a search feature on Defendant's website and that Defendant "aided and abetted" the transmission of the contents of those searches to third-parties, in violation of California's Invasion of Privacy Act ("CIPA") (specifically, Cal. Penal Code § 631(a)). Plaintiff also alleges that this conduct, as well as Defendant's use of "cookies" and the purported collection of technical metadata, supports a common law count for "Invasion of Seclusion." However, the searches Plaintiff conducted use entirely common and generic terms of public companies and their high-ranking executives (as well as Plaintiff's common first name) that do not expose the kind of intimate or private details about him that would implicate any legitimate, traditional privacy interest. Nor does the collection of routine internet traffic data about Plaintiff implicate a traditional privacy interest. As a result, Plaintiff has not suffered an injury in fact that would afford him standing to sue under the "case or controversy" requirement of Article III of the Constitution.

Additionally, Plaintiff's allegations fail to state a claim and should be dismissed pursuant to Rule 12(b)(6). His CIPA claim is lacking because the generic terms he entered in the search function do not count as "content" under the relevant statutory scheme, and the information purportedly collected (generic search terms) is not so "outrageous" or "shocking" to the conscience as to permit a valid claim of "Invasion of Seclusion."

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

Additionally, Plaintiff's admitted status as a "statutory tester"—in which he purposely visited Defendant's website to try to manufacture a claim against Defendant—defeats the Invasion of Seclusion claim—if not the statutory CIPA claim as well—because Plaintiff knew he did not have a "reasonable expectation of privacy" in his interactions with Defendant's website.

All of these bases are sufficiently fatal to Plaintiff's Complaint, and it should be dismissed accordingly under Fed. R. Civ. P. 12(b)(1) and (6).

## II.    BACKGROUND

Plaintiff alleges generally that, on a certain number of occasions, he visited Defendant's website (http://adage.com) and used the site's search functionality to submit certain search queries. (First Amended Complaint ("FAC") [Dkt. No. 23], ¶ 1). He alleges that while using that search functionality, Defendant purportedly used (or at least, permitted) third-party tracking and analytics scripts, which allowed the contents of Plaintiff's search queries to be transmitted in real time to certain third-parties. (FAC, ¶¶ 2-3) Plaintiff alleges he did not consent to the purported interception of his communications by third parties. (FAC ¶ 4). Plaintiff contends that by employing the third-party software and transmitting the contents of his search inquiry to third parties, Defendant violated California's Invasion of Privacy Act, specifically, Cal. Penal Code § 631(a). (FAC ¶¶ 66 – 75) Plaintiff also alleges that the transmission of these searches, as well as the transmission of metadata-type internet tracking information, also support a claim for "Intrusion Upon Seclusion." (FAC ¶¶ 76 – 81.)

Plaintiff seeks statutory damages pursuant to Cal. Penal Code § 637.2 in the amount of $5,000 for each violation, as well as compensatory, punitive, and injunctive relief. (See FAC ¶ 7 and "Prayer for Relief.")

## III.    ARGUMENT

### A. Plaintiff's Fails to Allege an Actual Concrete Injury Sufficient to Establish Article III Standing.

The "case or controversy" requirement under Article III of the U.S. Constitution "limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

standing and that claims be ripe for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010) (citation modified). To establish standing under Article III, Plaintiff must demonstrate: (1) an injury in fact that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff bears the burden of establishing these elements at the pleading stage by clearly alleging facts demonstrating each element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Here, dismissal of Plaintiff's FAC is required under Fed. R. Civ. P. 12(b)(1) because Plaintiff does not meet this burden and lacks Article III standing as a result.

The Supreme Court has made clear that "Article III standing requires a concrete injury even in the context of a statutory violation" and that "a bare procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III." *Spokeo,* 578 U.S. at 341 (citation omitted). An injury is "concrete" only if it affects the plaintiff in a personal and individual way and carries a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021) (citing *Spokeo* and noting that the Court had rejected the proposition that a plaintiff "automatically" satisfies the "injury-in-fact" requirement whenever a statute grants a person a statutory right and purports to allow that person to sue to vindicate that right). A concrete injury is "real, and not abstract." *Id.* at 424 (quoting *Spokeo*, 578 U.S. at 340).

In the context of digital privacy and wiretapping claims, the Ninth Circuit has dictated that the routine, automated transmission of generic web data or commercial website interactions to a third party does not automatically produce a concrete injury. *See Popa v. Microsoft Corp.*, 153 F. 4th 784, 791 (9th Cir. 2025). Rather, to mirror a traditionally recognized common-law harm like intrusion upon seclusion or public disclosure of private facts, the underlying information collected must be ***deeply personal, sensitive, or invasive***. *Id.* To satisfy the injury-in-fact requirement of Article III standing,

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

Plaintiff, therefore, must show that the challenged technology collected or disclosed "embarrassing, invasive, or otherwise private information." *Id*. Federal courts in California consistently draw a sharp line between the disclosure of sensitive personal data and routine, generic data. *See id.*

Here, Plaintiff attempts to shore up his claims by including additional detail (as compared to his original Complaint) about his interactions on Defendant's website by: (1) providing the search terms he input into the site's search function; and (2) alleging that the tracking technology involved had the *potential* to associate those searches with Plaintiff. Even with the added detail, Plaintiff's allegations still fail to demonstrate a basis for Article III standing.

**1. Generic Search Terms About Public Companies and Figures Do Not Implicate a Protected Privacy Interest.**

In his original Complaint, Plaintiff previously alleged generally that Defendant's website captured and transmitted the "contents" of his search inquiries to third parties, without identifying the actual "content"—i.e., the search terms themselves. [See Dkt. 1]. Plaintiff's FAC reveals that he likely omitted these terms previously for good reason: because they do not implicate any "embarrassing, invasive, or otherwise private" information that would create any sort of legitimate, concrete injury. In fact, quite the opposite: Plaintiff's FAC shows that he entered generic terms including his first name and the names of various public companies and certain of their well-known public executives, such as "JPMorgan Chase," "Bank of America," "Citigroup," "Wells Fargo," "Goldman Sachs," "Jamie Dimon," "Jane Fraser", "Brian Moynihan," etc. (*See* FAC at ¶¶ 31, 74.)

The Ninth Circuit and other courts within the Circuit have ruled time and time again that the collection of generic information does not establish a violation of CIPA (or common law privacy claims) because it lacks personal substance that is sensitive, highly offensive or embarrassing. For example, in the seminal case of *Popa,* the plaintiff alleged that the information collected included: the date the user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user

10

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls, the user's mailing address with the street number and zip code omitted, and the pet supplies products the user clicked on. *See Popa*,  53 F.4th 784 at 786-87, 791. The Ninth Circuit held that this kind of information was insufficient to constitute a protected privacy interest that would serve as a basis for establishing standing. *Id. at* 791.

Courts applying the *TransUnion* and *Popa* frameworks to web-tracking technologies, therefore, routinely hold that the disclosure of non-sensitive, routine commercial data to analytics providers lacks the required historical analogy to sustain Article III standing. This principle is fatal to complaints targeting generic website search features and the collection of user metadata. *See, e.g., Maghoney v. Dotdash Meredith Inc.*, No. 24-cv-01124, 2026 WL 211094, at *4 (N.D. Cal. May 11, 2026) (Court dismissed CIPA and privacy claims involving search for health-related terms because the plaintiff failed to plausibly allege a concrete privacy injury); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025) (dismissing a wiretapping and CIPA claim for lack of standing where the complaint alleged only the collection of IP addresses, generic browser and device data or other vague "identifying information", failing to establish the disclosure of "embarrassing, invasive, or otherwise private" information); *In re USA Today Co., Inc. Internet Tracking Litig.*, No. 24-CV-05150-MMC, 2026 WL 932655, at *3 (N.D. Cal. Apr. 6, 2026) (dismissing a CIPA class action tracking claim for lack of Article III standing, ruling that the collection and transmission of location data, IP addresses, browser types, and general metadata is not "highly offensive to a reasonable person"); *Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1104 (C.D. Cal. 2025) (granting a footwear retailer's motion to dismiss a CIPA tracking claims, holding that under the *TransUnion* framework, the plaintiff lacked standing. This Court ruled that "an injury in law is not an injury in fact" (citing *TransUnion*), throwing out generic allegations that automated data-sharing deprived the plaintiff of control over his online activities).

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

Instead, courts have held that a violation tantamount to a traditional, substantive privacy injury require disclosure of specific, personal information. *See Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (dismissing CIPA claim and stating "Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy."); *Lightoller v. Jetblue Airways Corp.*, No. 23-cv-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (finding allegations that the defendant intercepted the plaintiff's communications with the defendant's website, without alleging disclosure of any specific personal information, fail to assert a concrete privacy harm).

Perhaps sensing the shortcomings of his original Complaint, in his FAC, Plaintiff attempts to concoct a purported privacy interest by alleging that these generic search terms disclose "the specific subjects of his financial and business research" and purportedly reveal that he is "monitoring his own public profile, reputation, and press coverage." (FAC at ¶¶ 31 – 32.) Ignoring for a moment the absurd pretextual nature of this allegation (it is hard to think of a more non-personal, non-invasive subject than everyday news about public, Fortune 500 companies and their high-ranking executives), the Ninth Circuit, and the instant court, have already rejected these same types of allegations that Plaintiff now makes.

Indeed, in *Popa*, the Ninth Circuit held that simply compiling plaintiff's shopping interests were insufficient to establish a privacy right that would connote standing. *See* 153 F.4th at 791 (noting that this type of information did not implicate the types of intimate, embarrassing or deeply personal details to constitute an actionable privacy interest because it was essentially the same as a store clerk observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential). Likewise, in *Maghoney v. Dotdash Meredith, Inc.*, the court concluded that a plaintiff who "merely *searched* sensitive health related terms" did not have a protectible privacy interest because

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

"nothing about Plaintiff's searches indicates those searches were tied to his personal medical history." 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) (emphasis in original).

In *Torres v. Seatgeek, Inc.*, the district court extensively compared examples of information that implicated traditional privacy interests that would connote standing (such as the gathering of "sensitive" information such as "medical and health information") and information that did not, such as the routine kind of information that Plaintiff has alleged here. *See* No. 25-CV-07118-LB, 2026 WL 1495202, at *4 (N.D. Cal. May 28, 2026) (collecting cases).

Likewise, in the recent matter *Crano v. Sojern*, the district court (relying on *Popa*) held that the plaintiff did not establish that she had Article III standing in making the same allegations here: that two hotel websites used tracking software "to collect information contained in her communications with the hotel's website" as well as identifying information that included "the hotel website and a cookie ID, mobile advertising ID (MAID), TV identifier, email address, and other persistent alpha-numerical unique identifiers […] such as IP address, device type, browser type, date and time stamp of clicks and web visits, detailed referrer URLs, and other technical information." Plaintiff alleged that the defendant paired the web interaction data with Plaintiff's identity using the various unique ids, which could include (when supplied by the travel company) her email address. No. 3:25-CV-02600-JSC, 2026 WL 1670136, at *1 (N.D. Cal. June 9, 2026).

In rejecting her standing argument based on her assertion of privacy interests of the type typically associated with a common law "Intrusion of Seclusion" claim (one of the claims identified by *Popa* as being relevant to determining the kinds of privacy interests traditionally recognized in common law), the court held that "Plaintiff [] 'identifies no embarrassing, invasive, or otherwise private information collected by Defendant." *Id.* at *3 (citing *Popa*, 153 F.4th at 791).

To be abundantly sure, however, this Court has already previously rejected Plaintiff's standing position with search terms that arguably were more sensitive and/or revealing than the generic terms used here. In *Vivek Shah v. Talentbridge, Inc.*, this Court

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

held that Plaintiff's search of "felony-friendly jobs" and "jobs no background check" near Los Angeles, would not be of the type that would be sufficient to demonstrate a protectible privacy interest. *See* No. 2:26-cv-00222-AH-SSCx, 2026 WL 1507888 at *2 (C.D. Cal. May 28, 2026).[1]

While courts have found standing when highly sensitive information is harvested—such as confidential medication information—they aggressively reject standing where the terms are innocuous. Transmitting a first name, the names of public companies, or the names of corporate employees does not expose intimate personal secrets. Because the captured information consists strictly of public record terms and non-unique identity snippets, its automated collection lacks any historical or common law analogue. Just as in the *TalentBridge* matter already decided against Plaintiff, "the search terms he submitted do not implicate a protected privacy interest." 2026 WL 1507888 at *2.

### 2. The hypothetical association of the generic search terms with Plaintiff does not alter the conclusion that he lacks standing.

Ostensibly, Plaintiff will attempt to argue that inputting of his first name "Vivek" somehow transforms the standing analysis because it would relate the generic search terms involving public companies and their figures *to him. See, e.g.,* FAC at ¶ 32 ("A search for one's own name is a communication of singular sensitivity and revelatory power.") But any such argument would be unsupported by common sense and has been consistently rejected as a matter of law—particularly, where, as here, Plaintiff has stopped short of alleging that the tracking technology *actually* identified him (as opposed to it having the hypothetical ability to do so).

First, Plaintiff has not alleged, ***with facts***, that the Defendant or third parties actually identified him in connection with the searches; he merely makes naked conclusions that they did so because he entered his first name as one of the search terms. But Plaintiff's

---

[1] In that case, Plaintiff did not identify the *exact* search terms used but alleged that he searched terms "similar to" those identified, as well as a "confirmatory control term." *See id.* (although it cannot be sure, given the similar claims in this matter, the "control" term may have been Plaintiff's first name). This Court reasoned that the search terms "do not disclose Plaintiff's specific criminal history, or even necessarily his status as a felon, given that anyone seeking a job without background checks might enter such search terms." *See id.* (citing *Maghoney*, 2026 WL 497402, at *5).

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

allegations do not support such a conclusion. Indeed, Plaintiff does not allege that he input his *full* name, only his first name "Vivek," which is highly common. Thus, there is no basic factual allegation that Defendant or the third party technology providers did, or even would be able to, identify him from the countless other persons in the world (or even just in California) named "Vivek."

Moreover, even if Defendants could somehow extrapolate his full name from just his first name, he has failed to show, as a matter of common sense, how this would establish that *he was the person inputting the search terms*. While being far from a model of clarity, the FAC appears to at least reflect that his name and the other search terms were entered on distinct occasions.[2] In other words, there is no natural tendency to associate Plaintiff's name with any of the other search terms based on a temporal proximity. By the same token, inputting Plaintiff's name as a search term—*even if* it was his complete name and *even if* it was contemporaneously searched with the other terms—is no more convincing at identifying him as the person conducting the search as opposed to the numerous other names apparently entered in the search function. Indeed, if the searcher's identity is to be revealed by the names input in the search, then by Plaintiff's own logic, the searches could just as easily have been completed by one of the many public figures identified, either looking for public news about themselves or their companies or, perhaps, even looking to find information about Plaintiff based on the numerous lawsuits he has filed.

Even though these search terms are generic and do not implicate privacy interests to begin with—there is no clear allegation in the FAC that Plaintiff's search terms were actually associated with his personal information.[3] This is the same kind of incomplete

---

[2] *See, e.g.,* FAC at ¶ 31 (On October 31, 2025, at approximately 8:20 a.m. GMT, Plaintiff typed his own first name into the Website's search bar and submitted it … On or about October 2025, and before that date, Plaintiff submitted through the same search bar fourteen additional queries — the names of seven major financial institutions (JPMorgan Chase, Bank of America, Citigroup, Wells Fargo, Goldman Sachs, Morgan Stanley, and Capital One) and their seven respective chief executive officers (Jamie Dimon, Brian Moynihan, Jane Fraser, Charlie Scharf, David Solomon, Ted Pick, and Richard Fairbank); and chart at FAC ¶ 74 (reflecting that search for "VIVEK" was input on October 31, 2025, while the remaining search terms simply reflect only a generic date of "Oct. 2025.).

[3] Similarly, even if Plaintiff's first name was actually identified and associated with his IP address, this is the kind of basic information, such as email address and phone number, that courts in the Ninth Circuit have routinely held does not "bear similarity to the 'highly

15

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

profiling information that the *Popa* court rejected as being insufficient to constitute a privacy interest that connotes standing. *See Popa,* 153 F.4th 784, 791 (9th Cir. 2025) ("[Defendant]'s conduct in this case does not implicate a similarly sensitive sphere. At most, Popa alleges that [the session replay technology] gathered her pet-store preferences ***and her street name*.**") (emphasis added); *see also Crano*, 2026 WL 1670136, at *3 (noting that the operative complaint did not allege the tracking pixel technology actually collected Plaintiff's *personal* information, rather, like here, it collected "identifying numbers associated with Plaintiff" and holding the information was akin to the information *Popa* held did not give rise to a concrete privacy interest.)[4]

But *even if* identifying information was de-anonymized and associated with Plaintiff, this *still* does not satisfy the standing analysis requiring a concrete injury-in-fact. Indeed, Plaintiff's allegations appear to mirror the same kinds of allegations made recently in *Torres v. Seatgeek, Inc.,* No. 25-CV-07118-LB, 2026 WL 1495202 (N.D. Cal. May 28, 2026). In that matter, the plaintiff alleged that defendant embedded trackers (some of which

offensive' interferences or disclosures that were actionable at common law." *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025) (collecting cases similarly reasoning); *see also Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (rejecting theory of concrete injury based on a privacy interest in controlling one's personal information when the plaintiffs alleged collection of their IP address because that "only disclose[s] the fact that a given device visited [the] website and the general location of that device, including what zip code it's in …[defendant's] acquisition of that information does not cause the kind of harm that can be vindicated in federal court.").

[4] Throughout his First Amended Complaint, Plaintiff alleges that certain of the tracking technologies had the ability to extract "identity-resolution," "identity-revealing" and/or "identity-linked" data about Plaintiff'(*See, e.g.,* FAC at ¶¶ 26, 63, 78) but he never fully explains what this "data" actually is, other than his first name and the contents of his searches. *See, e.g.,* FAC at 63 ("Plaintiff suffered: (a) the disclosure of identity-revealing message content — including his own name and the identities of the financial institutions and chief executives he researched — to four separate commercial surveillance enterprises; (b) the linkage of that content to Plaintiff's specific identity through Meta's and LinkedIn's identity-resolution cookies and graphs, and its dissemination into advertising and profiling products serving thousands of third-party businesses.).

In other words, Plaintiff alleges that certain of the third-party trackers ostensibly *had the ability* to somehow associate the generic search terms with his identity but he appears to stop short of alleging that any of the third parties actually did so. In *Popa*, the Ninth Circuit rejected the same kind of hypothetical allegations. *See Popa*, 153 F.4th at 791 ("To the extent [Defendant]'s tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information), Popa does not plausibly allege the infringement of any such privacy interest.") (emphasis in original).

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

are the same alleged by Plaintiff here) on its website that "can collect and transmit personally identifying information, including users' IP addresses, approximate location, browsing activity, and device metadata." Like here, plaintiff also alleged that "third parties collected the plaintiff's IP address and other device-fingerprint information that allowed them to track the plaintiff across multiple visits to [defendant]'s website (and other websites) and deanonymize the plaintiff's data by synchronizing his third-party user profiles." The defendant there allegedly did not present a pop-up blocker, consent checkbox, or other conspicuous notification before the trackers loaded. *Id.* at \*1.

The district court held that, notwithstanding that plaintiff's allegations were "more robust" than those in *Popa*, the information supposedly collected constituted "browsing information that does not suggest interception of embarrassing or sensitive data or a highly offensive disclosure and thus is not harm that establishes Article III standing." *Torres,* 2026 WL 1495202, at \*3. Importantly, like Plaintiff intimates here, the plaintiff in *Torres* attempted to establish standing by arguing that the linking of his internet activity to his identifying profiles on other sites, such as Tiktok and Meta (Facebook), implicated a traditional privacy interest. The *Torres* court rejected this argument, holding that "[u]nder *Popa*, this does not resemble any traditional common-law privacy tort." *Id.* 2026 WL 1495202, at \*4.

The *Torres* court further distinguished the facts before it from those in which standing was found, some of which Plaintiff now cites in his FAC. Indeed, in those distinguishable cases, there was  "sensitive information" (such as medical and health information) disclosed (*See Shah v. MyFitnessPal, Inc.*, __ F. Supp. 3d __, 2026 WL 216334, at \*3 (N.D. Cal. 2026); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 936 (N.D. Cal. 2023) (the disclosure of "sensitive personal information including race, location, politics, and medical information"); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 862–63 (N.D. Cal. 2026) (the plaintiff alleged that the defendant captured "sensitive data")) or the cases involved more egregious conduct than what was alleged in that matter and similarly here. *See, e.g., McClung v. AddShopper, Inc., No.* 23-cv-01996-VC, 2024 WL

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

189006, at *1 (N.D. Cal. Jan. 17, 2024) (standing where the defendant "[m]isappropriat[ed] a person's browsing activity across a network of thousands of online retailers and us[ed] it to barrage that person's devices with unwanted email communications (particularly without giving the person a way to put a stop to the communications").

At bottom, Plaintiff has alleged that the third-party trackers may have identified that Plaintiff's IP address (or even an IP address associated with the common name "Vivek") searched for topics of general concern on Defendant's website. Under applicable standards, this does not involve a protectible privacy interest sufficient to establish standing.

### B. Plaintiff Fails to State any Plausible Claim.

To survive a motion to dismiss under Fed. R. of Civ. P. 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard demands more than a "the-defendant-unlawfully-harmed-me accusation." *Id.* Crucially, a court is not required to accept as true "legal conclusions couched as factual allegations," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

#### 1. Generic Search Queries Divorced of Meaning or Communicative Expression Lack the Statutorily Required "Contents or Meaning" to Violate CIPA Section 631(a).

To state a viable claim under the second or third clauses of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631(a), a plaintiff must plausibly allege that the defendant intercepted the **"contents"** of a communication. *Heiting v. Taro Pharms. USA, Inc.,* 709 F. Supp. 3d 1007, 1017 (C.D. Cal. 2023). The "content" of a communication has been defined as "any information concerning the substance, purpose, or meaning of [a] communication." *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021). California courts strictly distinguish actionable "contents"—the substantive, cognitive meaning of a private message—from non-actionable "record information," web telemetry,

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

and standard navigational data. *See Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.),* 750 F.3d 1098, 1107 (9th Cir. 2014).

Here, Plaintiff's allegations rely on third-party technology's apparent capture of generic web queries including the names of public corporations, and their high-ranking employees typed into Defendant's website search bar. As a matter of law, the transmission of these generic, public-facing search strings via standard marketing and analytics tools does not constitute "contents" under CIPA.

Under CIPA, a website search bar function does not establish a private, bilateral communication channel; rather, it is a technical tool used to query a database and filter a web catalog. In *In re Zynga*, the Ninth Circuit held that information showing how a user navigated a site, including URLs and basic search strings, constitutes non-actionable "record information." *Id.* at 1107.

When a user utilizes a standard search box on a news media platform and enters generic terms, they are not initiating a private, confidential dialogue or transmitting sensitive personal communications. Rather, the user is issuing a passive, mechanical command to filter a database of publicly available news articles. As courts have consistently held, such user-generated navigational data—including clicks, keystrokes, and browsing history—does not rise to the level of "content." *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (dismissing CIPA claim and holding that "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" do not constitute "message content in the same way that the words of a text message or an email do.").

To be sure, in *In re Zynga,* the Ninth Circuit examined whether the "referrer header information" that was purportedly transmitted to third parties, which included "the user's Facebook ID and the address of the webpage from which the user's HTTP request to view another webpage was sent." In other words, the information at issue disclosed the Facebook user ID and the websites they were viewing. The Ninth Circuit declined to hold that this

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

constituted "content" because the pieces of information are not the "substance, purport, or meaning" of a communication." *In re Zynga Priv. Litig.,* 750 F.3d at 1107 (9th Cir. 2014). Indeed, like the analogy above, the plaintiffs tried to argue that the record information can become content if the record is the subject of a communication, as in an email message saying "here's my Facebook ID number" or "you have to check out this website." The Ninth Circuit declined to hold that this would constitute "content", contrasting it with the situation as found by the First Circuit where a party had communicated with a website by entering their personal medical  information. *Id.* (citing *In re Pharmatrak,* 329 F.3d 9, 15, 18–19 (1st Cir.2003)).

Here, it should not be forgotten that Defendant's website represents a digital expression of "Ad Age, an advertising-industry trade publication." (FAC ¶ 2.) In other words, it is a media website that covers topics of public relevance within the advertising industry. A generic query such as those input by Plaintiff, involving common public companies and their executives (and even Plaintiff's first name), is completely devoid of subjective content or communicative intent. It is a functional routing device that acts the same as a click on an internal website directory or hyperlink. The search merely tells the system *where* to direct the user within the platform's pre-existing archive, rather than *what* private message the user is trying to articulate. Because Plaintiff's search terms function solely as "record information" to facilitate navigation, they fall entirely outside the scope of CIPA liability. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (dismissing § 631(a) claim where software merely recorded user interactions for analytics, akin to a tape recorder, without interception of substantive communication).

Plaintiff's inputting of these terms into Defendant's search function does nothing to convey meaning or communicative intent—other than the fact that Plaintiff sought to view pages on Defendant's website that contained or related to the generic terms he input. In other words, the searches do not implicate *why* Plaintiff was searching these terms or any expression of thought that gives the terms any sort of contextual relevance; nor do they

20

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

implicate any logical assumptions or facts about Plaintiff.[5] *See, e.g, Vivek Shah v. Talentbridge, Inc.*, *supra* (where this Court noted that Plaintiff's basic search of "felony-friendly jobs" and "jobs no background check" did not necessarily disclose that *he* was a felon or had a criminal record)). Indeed, the information conveyed would be no different had Plaintiff clicked on a hyperlink for an article on Defendant's website containing one of the search terms he input. The fact that Plaintiff input a term himself does not transform the analysis.

### 2. Plaintiff's common law claim for intrusion upon seclusion fails as a matter of law because the alleged tracking is not "highly offensive."

To survive a motion to dismiss a common law claim for intrusion upon seclusion under California law, plaintiff must plausibly allege: (1) an intentional intrusion into a private place, conversation, or matter, and (2) in a manner **"highly offensive to a reasonable person."** *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998). Plaintiff's allegations regarding the transmission of search bar data fail to satisfy either mandatory element.

The first element of the tort requires a threshold showing that the defendant intruded into a truly private matter. *Id.* As the Ninth Circuit explained, there is "no free roaming privacy right at common law" (*Popa*, 153 F.4th at 792) and California courts have established that a user does not possess an objectively reasonable expectation of privacy in their internet browsing activity. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (holding that standard web browsing histories and URL data are not "private" or "sensitive" information). Moreover, "[i]n California, courts have developed a presumption that Internet communications do not reasonably give rise to [a privacy] expectation." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019); see also *Rodriguez v. Google LLC,* No. 20-CV-04688-RS, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) ("[T]he California courts 'have developed a presumption

---

[5] This is not to say that no search terms can be communicative. As noted by the Ninth Circuit in *In re Zynga*, searches involving sensitive information, such as health information, can be actionable. Other cases have likewise held that "unique search terms" could constitute protectible information.

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

that [i]internet communications do not reasonably give rise to [a confidentiality] expectation ... [for that reason] plaintiffs must plead unique, definite circumstances rebutting California's presumption against online confidentiality.”).

Here, the data captured by the third-party trackers consists solely of Plaintiff's first name, the names of public corporations, and the names of corporate employees. None of these terms touch upon intimate personal secrets or confidential matters. Public corporations and their employees are matters of public record; typing their names into a commercial search bar to filter a database is a public, transactional act. Furthermore, a non-unique first name is standard identifying record data, not a private communication. Because Plaintiff voluntarily disclosed these broad commercial queries to Defendant's website to render a page, he cannot claim a reasonable expectation of absolute seclusion in that activity.

However, even if Plaintiff could establish a privacy interest, his claim fails because the alleged intrusion is not "highly offensive" to a reasonable person as a matter of law. To meet this high statutory bar, the defendant's conduct must be exceptionally egregious, and 'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norm'" *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (citation omitted).

Again, while courts occasionally permit intrusion claims to proceed where tracking scripts capture highly sensitive, protected matters—such as confidential medical information (*See, e.g., In re Meta Healthcare Pixel Litig.,* 713 F. Supp. 3d 650, 654 (N.D. Cal. 2024)—they strictly reject claims involving generic information that is not sensitive and that involves "routine commercial behavior." *See, e.g., Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (dismissing intrusion upon seclusion and invasion of privacy claims because "Plaintiffs do not allege that the data allegedly collected by [defendant] is sufficiently specific or personal, and its collection sufficiently harmful, to be highly offensive.") [citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (LinkedIn's disclosure of users' browser history to third parties was not highly offensive); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal.

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

2014) (Google's collection and disclosure of users' browsing histories was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosures of unique device identification number, personal data, and geolocation information without consent were not an egregious breach of social norms).

Because the transmission of a first name and public corporate names lacks any degree of sensitivity, the use of standard analytics pixels to track this data falls completely below the threshold of common law offensiveness. Accordingly, Plaintiff has failed to identify an intrusion into a private matter or an egregious breach of social norms, and his claim for intrusion upon seclusion must be dismissed with prejudice.

## IV.   CONCLUSION

For all these reasons, Defendant's Motion to Dismiss Plaintiff's FAC should be granted in its entirety.

DATED:  July 6, 2026

Respectfully Submitted,

**KJC LAW GROUP, A.P.C.**

By:   */s/ Kevin J. Cole*
Kevin J. Cole, Esq.

*Attorneys for Defendant*
*Crain Communications, Inc.*

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant, certifies that this memorandum does not exceed 25 pages, excluding the caption, the table of contents, the table of authorities, the signature block, and any indices and exhibits.

DATED:  July 6, 2026                                      **KJC LAW GROUP, A.P.C.**

                                           By:   */s/ Kevin J. Cole*
                                                 Kevin J. Cole, Esq.

                                                 *Attorneys for Defendant*
                                                 *Crain Communications, Inc.*

## CERTIFICATE OF SERVICE

I certify that on July 6, 2026, I electronically filed the foregoing document(s) with the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED:  July 6, 2026                                      **KJC LAW GROUP, A.P.C.**

                                           By:   */s/ Kevin J. Cole*
                                                 Kevin J. Cole, Esq.

                                                 *Attorneys for Defendant*
                                                 *Crain Communications, Inc.*

24

DEFENDANT's MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT