Vivek Shah
1301 N. Broadway, Ste. 32167
Los Angeles, CA 90012
Telephone: (224) 246-2874
Email: newvivekshah@gmail.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

| | |
|---|---|
| VIVEK SHAH,<br><br>Plaintiff,<br><br>v.<br><br>CRAIN COMMUNICATIONS, INC.,<br><br>Defendant. | Case No. 2:26-cv-03070-RGK-CTS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:   August 3, 2026<br>Time:   9:00 a.m.<br>Courtroom: 850, 8th Floor<br>Judge:  Hon. R. Gary Klausner |

Plaintiff Vivek Shah respectfully submits this Opposition to Defendant Crain

Communications, Inc.'s Motion to Dismiss the First Amended Complaint (Dkt. 26).

i

# TABLE OF CONTENTS

I. PLAINTIFF HAS ARTICLE III STANDING........................................................1

II. THE FAC STATES A CLAIM UNDER PENAL CODE § 631(a)....................11

III. THE FAC STATES A CLAIM FOR INTRUSION UPON SECLUSION.......15

IV. CONCLUSION..............................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Bornstein v. Sonic Auto., Inc.*, 2014 WL 431203 (Cal. Ct. App. Feb. 3, 2014) ......14

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ..............................14

*Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024)......................................18

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) ....................................1

*Carolus v. Nexstar Media Inc.*, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ........10

*Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016 (C.D. Cal. 2025) ................4

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) ......................................19

*D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928 (N.D. Cal. 2026) 16, 19, 20

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025)..................11

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ..................................1, 5

*Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024).19

*Ex parte Jackson*, 96 U.S. 727 (1878) .....................................................................2

*Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025)..................................7

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025).....................5, 9

*Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025) 8

*Garcia v. Anschutz Ent. Grp., Inc.*, 2026 WL 1278912 (C.D. Cal. May 5, 2026) ...8, 9, 17

*Garcia v. Truist Fin. Corp.*, 825 F. Supp. 3d 1149 (C.D. Cal. 2026).......................4

*Graham v. Noom, Inc.,* 533 F. Supp. 3d 823 (N.D. Cal. 2021)    15

*Hammerling* v. Google LLC, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............19, 20

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)........................................19

*Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024)..11, 13, 14

*Hernandez* v. Hillsides, Inc., 47 Cal. 4th 272 (2009) ............................................20

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)...passim

*In re Meta Android Priv. Litig.*, 2026 WL 1279416 (N.D. Cal. May 11, 2026) ....11, 19

In re *Zynga* Privacy Litig., 750 F.3d 1098 (9th Cir. 2014)..........................11, 12, 13

*Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986 (N.D. Cal. 2024)........................15

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022)............15

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023)....................15

*Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 (N.D. Cal. 2025).....................9

*Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857 (N.D. Cal. 2026).................4, 5

*Langer v. Kiser*, 57 F.4th 1085 (9th Cir. 2023) ....................................................19

*Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026) ................................................................................................................................10

*Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225 (9th Cir. June 20, 2025) ....12

*Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845 (N.D. Cal. 2025) .............9

*Pac. Tel. & Tel. Co. v. Superior Court*, 2 Cal. 3d 161 (1970)..................................3

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) ........................................1

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ..............................1, 3, 4, 5

*R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024)................................11

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) ........................................................7, 15, 18

*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......4

*Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025)..8

*Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921 (C.D. Cal. 2025) ............15

*Rodriguez v. Brushfire Recs.*, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025)...........9

*Sanders v. ABC*, 20 Cal. 4th 907 (1999)................................................................19

*Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906 (N.D. Cal. 2026)..................17, 19

*Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200 (1998)..................................3, 18

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ...........................................1, 6, 7

*Webb v. Louw*, 2003 WL 22017840 (Cal. Ct. App. Aug. 27, 2003) .......................14

*Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121 (N.D. Cal. 2025)..16, 19

*Wooten* v. BioLife Plasma Servs. L.P., 807 F. Supp. 3d 1139 (E.D. Cal. 2025) ....10

*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023)..........................15

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..................14

## Statutes, Rules, and Other Authorities

Cal. Penal Code § 631(a) ...........................................................................11, 14, 15

Cal. Penal Code § 632...........................................................................................14

Cal. Penal Code § 637.2(c) .....................................................................................7

Cal. Penal Code former § 640...................................................................................3

Fed. R. Civ. P. 11(b) ..........................................................................................9, 18

Restatement (Second) of Torts § 652B (1977) ........................................................2

C.D. Cal. L.R. 11-6.1 ...........................................................................................22

Court's Standing Order ¶ 6...................................................................................22

iv

# I. PLAINTIFF HAS ARTICLE III STANDING

*TransUnion* did not leave courts guessing which harms qualify: it "specifically cited 'reputational harms, disclosure of private information, and intrusion upon seclusion' as examples of 'harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) (*quoting TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)). The secret acquisition of a person's composed messages by uninvited third parties is not a strained analogue to those torts; it is what they exist to redress. The Ninth Circuit has held that "historical practice provides support not only for the conclusion that wiretapping is actionable, but also for the conclusion that a wiretapping plaintiff 'need not allege any further harm to have standing.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–19 (9th Cir. 2020); *accord Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("privacy torts do not always require additional consequences to be actionable"). And while the inquiry is historical, it does not proceed in disregard of the legislature: courts are "guided in determining concreteness by 'both history and the judgment of Congress,' or the legislature that enacted the statute," *Campbell*, 951 F.3d at 1116, and "[t]he judgment of the Illinois General Assembly . . . is 'instructive and important' to our standing inquiry," *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1273 (9th Cir. 2019); *accord TransUnion*, 594 U.S. at 425–26 ("Courts must afford due respect to Congress's decision to impose a

1

statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action…"). California exercised that judgment in 1967, extending an unbroken line of communications-secrecy law reaching back to the telegraph era.

The tradition locates the wrong in the act of interception, not in what interception yields. Restatement (Second) of Torts § 652B attaches "highly offensive" to "the intrusion" — the conduct — and its paradigm acts are "tapping his telephone wires" and "opening his private and personal mail," unqualified by contents, because "[t]he intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind." *Id.* cmt. b. The sealed letter shows why: the wrong is breaking the seal, not the grocery list inside. "Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles." *Ex parte Jackson*, 96 U.S. 727, 733 (1878). The Court's own exception marks the line that decides this Motion: the envelope's exterior — addressing, form, weight — is record information anyone may observe; the message inside is content no one may open. The same word sits on either side of that line depending on capacity: a person who answers the telephone and states his name has spoken content protected against the wiretapper; the identical name in the carrier's subscriber file is a record. What I typed into Defendant's search

2

bar — including my own name — was the letter, not the envelope. FAC ¶¶ 28–29, 31–32.

CIPA codifies this act-focused tradition. Former Penal Code § 640 punished every person who "clandestinely taps, or makes any unauthorized connection with any telegraph or telephone wire," and "[i]n 1967, the foregoing proscription of wiretapping in Penal Code, section 640 was reenacted as part of a comprehensive statutory scheme covering invasion of privacy." *Pac. Tel. & Tel. Co. v. Superior Court*, 2 Cal. 3d 161 (1970). California's Supreme Court is emphatic that the act, not the yield, is what offends: "tapping a personal telephone line" would "be deemed highly offensive even if the information sought was of weighty public concern." *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 237 (1998).

*Popa* involved session-replay software recording a visitor's navigation of a single pet-supply website — a record "most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular," because "[a]t most, *Popa* alleges that Clarity gathered her pet-store preferences and her street name." 153 F.4th at 791. Sensitivity did the sorting work there because the channel was ambiguous: a store aisle is open to observation, so only what observation yields can make watching wrongful. A search query is not an aisle; it is a composed, addressed message on a bilateral channel, and its verbatim duplication mid-transit is the Restatement's wiretap paradigm itself.

3

*Popa* then drew the very line that decides this Motion: "To the extent Microsoft's tracking software could be offensive in particular circumstances (e.g., involving sensitive medical or financial information), *Popa* does not plausibly allege the infringement of any such privacy interest." *Id.* Defendant quotes that sentence (Mot. 16 n.4) without confronting it: my intercepted messages were financial and business research — seven of the country's largest financial institutions and their chief executives — self-authenticated by a query consisting of my own name, "a communication of singular sensitivity and revelatory power." FAC ¶¶ 31–32. Courts in this District apply the caveat as written: financial-research data "could be viewed as embarrassing, invasive, or otherwise private," *Garcia v. Truist Fin. Corp.*, 825 F. Supp. 3d 1149 (C.D. Cal. 2026), and interception of "search queries" and "products searched for" states a concrete privacy injury, *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016 (C.D. Cal. 2025). Nor must every query be sensitive: aggregation into an identity-linked profile "can itself constitute a violation of the reasonable expectation of privacy, even when individual data points might not otherwise be protectable." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025).

*Popa* "did not set out a new rule of law for Article III standing, but rather applied the same common law rules to the individual circumstances of that case." *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 863 (N.D. Cal. 2026). Three

4

structural differences separate this case's circumstances from *Popa*'s, and each has proven dispositive. First, message content versus navigation: *Popa*'s clerk watched where a shopper walked; Defendant's trackers took the words I wrote. Second, cross-site identity resolution versus single-site replay: "unlike in *Popa*, which involved non-sensitive browsing activity on a single pet supply website," standing exists where trackers "created or added to detailed user profiles by tracking their interactions across the internet, and . . . this tracking remains ongoing." *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 863 (N.D. Cal. 2026). Third, consent override: "*Popa* never purported to have expressly 'reject[ed]' the tracking," *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 868 (N.D. Cal. 2025); I rejected it "beginning with Plaintiff's very first visit to the Website and on every visit thereafter," and was tracked identically anyway. FAC ¶ 49.

*Popa* also expressly preserved the decision that governs this consent-override posture: "we need not revisit *Eichenberger* and *In re Facebook* in reaching our decision today," because *In re Facebook* accounted for individual circumstances — "Facebook continued to collect their data after they had logged off the social media platform," tracking that occurred "'no matter how sensitive' or personal users' browsing histories were." *Popa*, 153 F.4th at 794 (*quoting In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)). Continued collection after an express refusal is this case.

Defendant's central premise is that I alleged only that the trackers "had the *potential* to associate those searches with Plaintiff," Mot. 10 (emphasis original), and "stopped short of alleging that the tracking technology *actually* identified him," Mot. 14 (emphasis original). The paragraph Defendant itself quotes refutes that premise. FAC ¶ 63(b) pleads, as a harm I "suffered," "the linkage of that content to Plaintiff's specific identity through Meta's and LinkedIn's identity-resolution cookies and graphs, and its dissemination into advertising and profiling products serving thousands of third-party businesses." Defendant's footnote 4 reproduces that language verbatim — then asserts that I "appear[] to stop short of alleging that any of the third parties actually did so." Mot. 16 n.4. A facial motion cannot quote an allegation of accomplished linkage and dissemination and declare it unpleaded. The mechanism is pleaded with documentary specificity: Meta's _fbp cookie, "which Meta uses to match web activity to specific Meta accounts," FAC ¶ 35, and LinkedIn's year-long bcookie written in the same round-trip that carried my search term, FAC ¶ 36. Defendant's remaining ripostes — "Vivek" is common, the searches occurred on distinct occasions (Mot. 15) — are quarrels with the inferences my allegations support, and inferences run in my favor on a facial attack. The linkage pleaded here runs through persistent identifiers on a single browser, not temporal proximity, and the Motion never engages that mechanism. *TransUnion* itself marks dissemination as the line between standing and its absence: "the 1,853 class members

6

whose reports were disseminated to third parties suffered a concrete injury in fact under Article III," while those whose files were never sent to anyone did not. 594 U.S. at 432–33. Paragraph 63(b) pleads both linkage and "dissemination into advertising and profiling products serving thousands of third-party businesses." On *TransUnion*'s own architecture, I stand with the 1,853.

The Motion engages only ¶ 63(a) (disclosure) and ¶ 63(b) (linkage). It never mentions ¶ 63(c)–(f): the planting of persistent tracking identifiers "enabling ongoing cross-site surveillance"; "the loss of control over his personal information and the diminution of its value"; "the nullification of his expressly stated tracking preference, registered on every visit"; and "distress, lost privacy, and a chilling of his willingness to communicate freely." FAC ¶ 63. Subparagraphs (c) and (e) are injuries courts sustain as independently sufficient — the override of an expressed opt-out most consistently of all — and the others reinforce the concreteness of the whole; every one went unanswered. Nor is there an anonymization escape: "the capture of personal information without a user's consent[] occurs when the personal information is obtained in the first instance. . . . A stolen diamond remains stolen even if it makes its way into a bag with legal stones or the thief does not know from whom he took it." *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025). Section 637.2(c) separately confirms that CIPA itself requires no actual damages, *Ribas v. Clark*, 38 Cal. 3d 355, 365 (1985) ("the Legislature intended to provide a

7

remedy for invasions of privacy without requiring proof of actual damages"); Article III is satisfied by the traditional-harm and linkage showings above.

I do not ask the Court to depart from *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735-RGK-JC, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025); I ask it to apply the rule *Autotrader* itself stated. Three points control.

First, the threshold. The FAC pleads no "tester" status; the phrase Defendant puts in quotation marks appears nowhere in it. Where the pleading does not allege tester status, "there is, as a threshold matter, no basis to consider [the plaintiff's] alleged status as a tester in determining his standing." *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025). On a facial attack, Defendant's characterization is not a fact.

Second, *Autotrader*'s own rule makes expectations dispositive: "Plaintiff's injury squarely depends on her expectations, as an invasion of privacy requires a reasonable expectation of privacy to have been violated." 2025 WL 1122387. The *Autotrader* plaintiff identified no act creating any expectation — she visited "fully expect[ing]" a violation "so that she could file this action." *Id.* Here, Defendant's own interface created the expectation: it solicited a "preference," offered "Opt-out," and I selected it on my first visit and on every visit after. FAC ¶¶ 46, 49, 77. That is the precise feature *Garcia v. Anschutz* held takes a case outside *Autotrader*: "Because she had expectations that Defendant would not collect and transmit her

8

information in accordance with her choice to reject all cookies from the website, Plaintiff's status as a 'tester' did not affect her expectations of privacy." *Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 WL 1278912 *4 (C.D. Cal. May 5, 2026); *accord Rodriguez v. Brushfire Recs.*, No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144 *6 (C.D. Cal. Dec. 15, 2025) (tester status "does not preclude her from establishing Article III standing to sue"); *Gabrielli v. Haleon*, 815 F. Supp. 3d 852, 859 (tracking continued "even after those visitors explicitly rejected and opted out").

Third, this FAC pleads what the *Autotrader* and *Brushfire* pleadings lacked: the verbatim contents of fifteen queries actually intercepted (FAC ¶¶ 31, 74) and accomplished identity linkage (¶ 63(b)) — not "generalized allegations of the type of data that the [tracker] is capable of collecting." *Brushfire*, 2025 WL 3692144 at *7. And documenting a suspected violation before filing is the "inquiry reasonable under the circumstances" that Rule 11(b) commands — diligence, not a waiver of the expectation Defendant's own interface invited.

Defendant's own authorities state the test I satisfy and describe the facts I pleaded. *Khamooshi* dismissed allegations of IP addresses and generic browser and device data because a plaintiff must identify the "specific personal information she disclosed that implicates a protectable privacy interest." *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025); *accord Mitchener v. CuriosityStream,*

*Inc.*, 815 F. Supp. 3d 845, 850 (N.D. Cal. 2025). The FAC does precisely that — verbatim, fifteen times. FAC ¶¶ 31, 74. *Carolus* dismissed an IP-only claim while observing that "most of the plaintiffs' cited cases that found a privacy injury involved disclosure of several types of personal information all linked together, not just IP addresses." *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193 *1 (N.D. Cal. Apr. 9, 2025). That sentence describes this FAC. *Wooten* involved email and IP addresses and capability-only bridging allegations, 807 F. Supp. 3d at 1144, and on the Motion's own descriptions the rest occupy the same side of the line: *Torres* and *Crano* involved device identifiers and "identifying numbers"; *In re USA Today* involved "IP addresses and other" routine data; *Price* involved "generic allegations" of automated data-sharing; *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026), involved unlinked search history. Not one involved verbatim, composed message content linked to a known identity after an express opt-out was overridden. *Shah v. TalentBridge* — pending on appeal, Ninth Circuit No. 26-3514, a fact the Motion omits — is no different in kind: by the Motion's own account, that plaintiff "did not identify the exact search terms used." Mot. 14 n.1. Here the terms are pleaded verbatim, one of them is my name, and the linkage is pleaded as accomplished fact. ¶ 63(b).

10

## II. THE FAC STATES A CLAIM UNDER PENAL CODE § 631(a)

Defendant's contents argument rests on a mischaracterization of controlling Ninth Circuit authority, a "navigational command" theory its own footnote abandons, and a record-information doctrine inapplicable to message text I composed.

Search terms are contents. The Ninth Circuit explained in *In re Zynga Privacy Litigation* that "[u]nder some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication." 750 F.3d 1098, 1108–09 (9th Cir. 2014). *In re Facebook* reaffirmed that URLs disclosing search terms reveal users' "personal interests, queries, and habits." 956 F.3d at 605; *accord R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (such URLs "are 'contents' of communications under CIPA and ECPA"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."). Nor is there a "generic terms" carve-out: searches for ordinary "items, products, articles" are contents. *In re Meta Android Priv. Litig.*, No. 25-cv-04674-RFL, 2026 WL 1279416, at *2–3 (N.D. Cal. May 11, 2026) ("Plaintiffs plausibly allege those types of information constitute the content of their communications."); *accord Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 825 (E.D. Cal. 2025) ("Descriptive

11

URLs that reveal specific information about a user's queries reflect the 'contents' of a communication."). Contents means "the intended message conveyed by the communication," *Zynga*, 750 F.3d at 1106 — not a message Defendant finds interesting. The Ninth Circuit recently reversed a dismissal on exactly this distinction: "The complaint alleged real-time capture of the contents of *Mikulsky*'s communications on Defendants' website without her consent, not merely the real-time capture of information regarding the characteristics of the communications." *Mikulsky v. Bloomingdale's, LLC*, No. 24-3564, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025). And the interception is pleaded as contemporaneous: Meta logged each PageView in real time, LinkedIn synchronized its cookies in the same round-trip that carried the query, Chartbeat rendered the terms to live dashboards, and Google ran its ad auction on the live request. FAC ¶¶ 41–43.

Defendant inverts *Zynga*. Defendant asserts that *Zynga* "held that information showing how a user navigated a site, including URLs and basic search strings, constitutes non-actionable 'record information.'" Mot. 19. *Zynga* held no such thing. The referrer data there was record information precisely because it was "only basic identification and address information, not a search term or similar communication made by the user." 750 F.3d at 1109. Search strings are the express carve-out, *id.* at 1108–09 — Defendant has recast the exception as the holding.

The "navigational command" theory fails. Defendant calls my queries "a functional routing device that acts the same as a click on an internal website directory or hyperlink." Mot. 20. A click selects an address the website authored; a search query is free-form text I composed and transmitted. *Zynga* distinguished *Pharmatrak*'s actionable user-entered data from a referrer header "automatically generated by the web browser," 750 F.3d at 1108; my fifteen queries were generated by me, not my browser. *Heerde* drew the same line — CIPA protects "user-generated material," not "routine identifiers," 741 F. Supp. 3d at 859. Defendant's own footnote concedes that searches "can be actionable" and that "'unique search terms' could constitute protectible information." Mot. 21 n.5. The concession abandons the categorical rule the argument requires.

Record information is not in play. My claim rests exclusively on composed message content: the verbatim search terms enumerated at FAC ¶ 74. IP addresses, cookies, and timestamps appear in the FAC only as the identity-linkage mechanism and as injury (FAC ¶¶ 35–38, 63); I do not contend they are contents. And *Zynga* itself confirms a name is content when it is the message: the court endorsed *Pharmatrak* — "Such was the case in *In re Pharmatrak*," where users "communicated with the website by entering their personal medical information into a form" — as the paradigm of contents disclosure. 750 F.3d at 1108. A name sitting

13

in a subscriber file is a record; a name typed and sent as the message is the message. FAC ¶¶ 31–32.

Section 631(a) contains no expectation-of-privacy element. Defendant's "private, bilateral communication channel" framing (Mot. 19) imports a confidentiality requirement from § 632, which requires a "confidential" communication "confined to the parties thereto." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 939 (N.D. Cal. 2023). Section 631(a) has no such text[1]; as Defendant's own authority holds, "the standard for CIPA § 631 is not whether a wiretapper's actions were 'surreptitious.' Rather . . . the inquiry focuses upon consent." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1079 (C.D. Cal. 2021). Even if such an element existed, "users have a reasonable expectation of privacy in 'unique search terms.'" *Heerde*, 741 F. Supp. 3d at 860 (*quoting Brown*, 685 F. Supp. 3d at 941). As for consent: the trackers fired before Defendant's banner could be read and kept firing

---

[1] See, e.g. *Webb v. Louw*, No. E032249, 2003 WL 22017840, at *14 (Cal. Ct. App. Aug. 27, 2003) ("Louw has failed to cite any authority for her proposition that Penal Code section 631 requires a plaintiff to prove that he or she had an expectation of privacy. Whether or not Webb had a reasonable expectation of privacy as to the phone conversation with her children has no bearing upon whether Louw's actions violated sections 631 or 637."); *Bornstein v. Sonic Auto., Inc.*, No. G047251, 2014 WL 431203, at *7 (Cal. Ct. App. Feb. 3, 2014) ("Unlike section 632, which proscribes the recording of communications of which the parties have a reasonable expectation of privacy, section 631 broadly proscribes, inter alia, the interception of *any* communication without the consent of all the parties involved. Section 631 does not describe the type of consent required of the participants to a communication before the communication may be lawfully monitored.") (emphasis original).

after my express opt-out, so no prior consent exists. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at \*1 (9th Cir. May 31, 2022) (§ 631(a) "require[s] the prior consent of all parties to a communication"). FAC ¶¶ 45–51.

*Graham v. Noom* 's "extension" theory — cited only in a parenthetical (Mot. 20) — has been rejected: reading vendor use into the second clause "would add requirements that are not present (and swallow the third prong in the process)," *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023); *accord Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 971 (N.D. Cal. 2023) ("a misinterpretation of Section 631 and *Ribas*"). The dispositive line is the recipient's own use: this Court's published ruling found "no indication that the advertising companies are merely providing a tool that aids the Website." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 928 (C.D. Cal. 2025); *accord Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 993 (N.D. Cal. 2024) ("read and used it for its own marketing services"). Each Tracking Company is alleged to incorporate my intercepted queries into its own commercial products. FAC ¶¶ 52–57. Defendant developed no party-exception argument; one raised for the first time on reply is waived.

## III. THE FAC STATES A CLAIM FOR INTRUSION UPON SECLUSION

The Motion attacks a theory I did not plead and never engages the one I did. Its offensiveness argument (Mot. 21–23) grades the sensitivity of my search terms

and stops. Not once does it mention the cookie banner, the "Opt-out" button, or Defendant's circumvention of both — the FAC's stated basis for offensiveness. Defendant's banner solicited a choice (¶ 46); the trackers fired "before the banner could be read and before any 'preference' could be 'select[ed]'" (¶ 47); I "selected the banner's 'Opt-out' option" on my "very first visit" and "on every visit thereafter," and Defendant "disregarded Plaintiff's election every time" (¶ 49); and "[t]he intrusion is highly offensive to a reasonable person, and Defendant's circumvention of Plaintiff's opt-out is what makes it so" (¶ 79). A brief that measures the data while refusing to acknowledge the manner of its taking has not engaged the pleading it asks the Court to dismiss.

Soliciting a privacy election and overriding it is deceit — the recognized "plus factor." Courts hold that "deceit can be a kind of 'plus' factor" in the offensiveness analysis, and circumventing a cookie rejection is that deceit. *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 934-35 (N.D. Cal. 2026) (defendant "not only misled users into thinking that their cookie rejections would be effective but also led them to engage in tracked conduct they otherwise would not have undertaken"; those facts "preclude the Court from concluding, as a matter of law, that Smith & Wesson's invasion was not 'highly offensive'"); *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1132 (N.D. Cal. 2025) ("A reasonable visitor to UMG's website who selected 'Decline All' would thus reasonably expect UMG not to install performance

16

and analytics cookies on their devices."). The other half of the circumvention —
interception before the banner could be acted upon (¶ 47) — independently qualifies:
*Garcia* sustained an intrusion count where the visitor's selection was "ineffective
because there was a period that the website did collect, track, and transmit her
information before she was able to direct it not to," holding "[a] reasonable factfinder
could determine the alleged unauthorized collection of Plaintiff's information *prior*
to her ability to reject tracking technologies was an unacceptable intrusion in
violation of public policy." 2026 WL 1278912 *8.

Defendant knows this line of authority; it cited its centerpiece. The Motion
invokes *Shah v. MyFitnessPal, Inc.* once, as a "sensitive information" case (Mot.
17), omitting that *MyFitnessPal* sustained precisely this opt-out-circumvention
theory: "A reasonable visitor . . . who chose to opt out of optional cookies would
thus reasonably expect [the operator] not to install such cookies on their devices."
824 F. Supp. 3d 906, 916 (N.D. Cal. 2026).

"Voluntarily disclosed" conflates the recipient with the eavesdroppers.
Defendant argues I "voluntarily disclosed these broad commercial queries to
Defendant's website." Mot. 22. The queries were "words he composed and addressed
to Defendant alone" (¶ 77); the intrusion is their simultaneous acquisition by four
non-parties (¶ 78). "[A] substantial distinction has been recognized between the
secondhand repetition of the contents of a conversation and its simultaneous

17

dissemination to an unannounced second auditor." *Ribas*, 38 Cal. 3d at 360–61. The Ninth Circuit agrees: "permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *In re Facebook*, 956 F.3d at 608. Nor was my expectation self-generated: Defendant's interface "invited Plaintiff to 'select [his] preference'" and "thereby represented that visitor tracking was subject to visitor choice." ¶ 77. The Ninth Circuit grounds reasonable expectations in exactly such representations: "the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1150 (9th Cir. 2024).

The expectation standard is objective, and Defendant's "statutory tester" theory fails twice. "The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Shulman*, 18 Cal. 4th at 232. First, the admission Defendant invokes does not exist: the phrase "statutory tester," which Defendant places in quotation marks, appears nowhere in the FAC. What the FAC pleads is that I "personally observed and documented — request by request" the interceptions using standard browser developer tools. FAC ¶¶ 5, 39. Rule 11 permits a party to plead facts only "after an inquiry reasonable under the circumstances," Fed. R. Civ. P. 11(b); documenting a

18

suspected violation before filing is the diligence the Rule commands, not a forfeiture of the claim the documentation supports. Second, subjective anticipation is irrelevant to an objective standard. "[P]rivacy, for purposes of the intrusion tort, is not a binary, all-or-nothing characteristic." *Sanders v. ABC*, 20 Cal. 4th 907, 915-16 (1999). Courts uniformly reject the argument: *Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) (plaintiff "acted as a 'tester'"; "This argument fails."); *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *4 (S.D. Cal. Feb. 12, 2024) ("'tester' status . . . do[es] not show Plaintiff consented"); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982) (acting "fully expecting that he would receive false information . . . does not negate the simple fact of injury"); *Langer v. Kiser*, 57 F.4th 1085 (9th Cir. 2023) ("His motivation is not relevant.").

Offensiveness is a fact question not resolvable on the pleadings. "The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *In re Facebook*, 956 F.3d at 606. Dismissal is reserved for "mere 'routine commercial behavior.'" *In re Meta Android*, 2026 WL 1279416 *6. Overriding a solicited opt-out on every visit is not routine commercial behavior.

Defendant's authorities share one disqualifying feature: none involved a solicited-and-overridden opt-out or the seizure of composed message content. *D'Antonio*, *Wiley*, and *MyFitnessPal* each rejected reliance on *Hammerling* and *In*

19

*re iPhone* because "[n]either case involved a specific promise that users would not be tracked in specific ways." *D'Antonio*, 820 F. Supp. 3d at 935. *Hammerling* dismissed because "though Google's representation in its Privacy Policy is ambiguous, its data collection is not blatantly deceitful," 615 F. Supp. 3d at 1091 — an ambiguous policy, not a binary button pressed and overridden. The Ninth Circuit itself distinguished *Low* and *In re iPhone*: "In those cases, there were likewise no allegations that the defendants tracked the plaintiffs after the plaintiffs stopped using the defendant's services." *In re Facebook*, 956 F.3d at 603–04. And *Hernandez* found no offensiveness because "[a]ctivation of the surveillance system was narrowly tailored in place, time, and scope," 47 Cal. 4th 272, 297 (2009) — the inverse of code firing on every page load and overriding an express refusal on every visit. The offensiveness question here is the deceit of soliciting my refusal and overriding it, and that question belongs to the factfinder.

## IV. CONCLUSION

As detailed in Plaintiff's concurrently filed Notice of Non-Compliance, the Motion also arrives roughly 500 words over this Court's word limit, behind a defective certificate, and resting on citations that do not withstand verification. The Motion should be denied in its entirety. In the alternative, any dismissal should be with leave to amend.

20

DATED: July 13, 2026

Respectfully submitted,

/s/ Vivek Shah
Vivek Shah

## CERTIFICATE OF COMPLIANCE

The undersigned, Vivek Shah, certifies that this brief contains 4,857 words, and consists of 20 pages, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order ¶ 6.

DATED: July 13, 2026

/s/ Vivek Shah
Vivek Shah