**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
*kevin@kjclawgroup.com*
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797

*Attorneys for Defendant*
*Crain Communications, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

VIVEK SHAH,

Plaintiff,

v.

CRAIN COMMUNICATIONS, INC.,

Defendant.

CASE NO. 2:26-cv-03070-RGK-CTS

*Assigned to Hon. R. Gary Klausner*

**DEFENDANT's REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF's FIRST AMENDED COMPLAINT**

Date: August 3, 2026
Time: 9:00 a.m.
Courtroom: 850, 8th Floor

Complaint Filed: March 18, 2026
Trial Date: March 23, 2027

# TABLE OF CONTENTS


Page

I. PLAINTIFF LACKS STANDING ........ 6

A. A Statutory Violation Alone Does Not Confer Standing. ........ 6

B. Because embarrassing, invasive or private information was not disclosed, Plaintiff has not alleged a protected privacy interest that has been intruded upon. It matters not that this information was associated with Plaintiff. ........ 7

II. Plaintiff has failed to state a claim under Rule 12(b)(6). ........ 13

A. Search terms are not a communication's "content" when they are the same as the addressing information. ........ 13

B. Plaintiff has not alleged an intrusion upon a private matter or seclusion. ........ 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Doe I v. Google LLC*
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 8

*Garcia v. Truist Fin. Corp.*
825 F. Supp. 3d 1149 (C.D. Cal. 2026) .......... 10

*In re Facebook, Inc. Internet Tracking Litig*
956 F.3d 589 (9th Cir. 2020) .......... 9, 11, 13

*In re Zynga Priv. Litig.*
750 F.3d 1098 (9th Cir. 2014) .......... 13, 14

*Khamooshi v. Politico LLC*
2025 WL 2822879 (N.D. Cal. 2025) .......... 13

*Kishnani v. Royal Caribbean Cruises Ltd*.
2025 WL 1745726 4 (N.D. Cal. June 24, 2025) .......... 8

*Maghoney v. Dotdash Meredith, Inc.*
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .......... 9, 10

*Popa v. Microsoft Corp.*
153 F4th 784 (9th Cir. 2025) .......... passim

*Schallert v. Laird Superfood, Inc.,*
2026 WL 1707585 (C.D. Cal. June 5, 2026) .......... 13

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) .......... 6

*Torres v. Seatgeek, Inc*.
2026 WL 1495202 (N.D. Cal. May 28, 2026) .......... 13

*Tripati v. Henman*
857 F.2d 1366 (9th Cir. 1988) .......... 11

*Vivek Shah v. Talentbridge, Inc.,*
2026 WL 1507888 (C.D. Cal. May 28, 2026) .......... 11

*Wooten v. BioLife Plasma Servs. L.P.*
807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......... 9

**State Statutes**

California Penal Code § 631(a)......6

Stripped of the pretextual characterizations by Plaintiff that he is just a regular, everyday internet user who happened to visit Defendant's website to engage in "financial and business research,"[1] Plaintiff's Opposition to Defendant's Motion to Dismiss [Dkt. No. 32] (the "Opposition") makes clear the self-proving reason Plaintiff's lawsuit must fail: Plaintiff visited Defendant's website with the expectation of a potential claim and because he had that expectation, he avoided inputting private or sensitive information and instead used generic terms about financial institutions and his first name (but not his last) in an attempt to conjure up a claim. In other words, Plaintiff's calculated strategy to avoid any actual harm by using generic search terms undermines his ability to properly allege a concrete injury-in-fact that establishes standing or shows that any private or embarrassing information was intercepted or intruded upon. Put simply, his transparent attempt to "have his cake" precludes him from "eating it too."

Plaintiff seeks to sidestep this reality by relying on the First Amended Complaint's conclusory allegations of the kinds of "profile" and cross-site tracking information the technologies at issue could collect and by arguing that the tracking technologies continued to collect information even after he purportedly "opted out". But this misses the point. The issue of standing asks not whether certain procedural mechanisms took place which give rise to a potential cause of action; rather, the question of standing focuses on whether Plaintiff has suffered an identifiable injury-in-fact. But here, besides the generic search terms at issue (and vague allegations involving tracking and "profiles"), there is nothing else alleged (with facts) in the FAC to demonstrate what actual, privacy-implicating information about Plaintiff was collected. This is fatal to his claims.

At best, the FAC alleges that Defendant purportedly allowed third-parties to understand that an internet user, located in California, potentially with the name "Vivek"

[1] Plaintiff's characterization that he was conducting "financial and business research" on Defendant's website borders on insulting. Even his FAC alleges that Defendant operates "an advertising-industry trade publication." (FAC ¶ 2). There would appear to be no legitimate reason why he would be researching financial firms on a publication aimed at the advertising industry.

(or with the various other names used), searched for "seven of the country's largest financial institutions and their chief executives" (Opposition at 4) and that the third parties then used this information to create a "profile" of Plaintiff. This is not enough. Even if Plaintiff purportedly "opted out" of the collection of this information, and even if the third-party technologies were able to associate these searches with Plaintiff, at the end of the day, there is *still* nothing "embarrassing, invasive, or otherwise private" that Plaintiff alleges was collected about him. Therefore, there simply has been no injury to Plaintiff and he has not properly supported his claims. The same basic analysis also casts doubt on his ability to assert proper claims as well. His FAC must be dismissed, and as it would appear he cannot correct the defects of the FAC, it should be dismissed with prejudice.

## I. PLAINTIFF LACKS STANDING

### A. A Statutory Violation Alone Does Not Confer Standing.

In his Opposition, Plaintiff first attempts to argue that because he has alleged the elements of a CIPA, Penal Code Section 631(a) claim (which does not require actual damages), then this is sufficient to confer standing. Plaintiff is simply incorrect, as he appears to confuse statutory standing with Article III standing. Indeed, courts have very clearly rejected the premise underlying Plaintiff's argument, noting that "a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016). To be sure, this is the central question that the Ninth Circuit confronted in *Popa v. Microsoft Corp.,* 153 F4th 784 (9th Cir. 2025)—looking not to whether a plaintiff has simply alleged they meet the requirements for a statutory cause of action but whether they have suffered an actual harm, and within the privacy context, a harm that is "similar to the 'highly offensive' interreferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 791; Therefore, any such argument that purported violation of Section 631(a) by itself confers standing should be rejected.

**B. Because embarrassing, invasive or private information was not disclosed, Plaintiff has not alleged a protected privacy interest that has been intruded upon. It matters not that this information was associated with Plaintiff.**

Plaintiff next argues that he suffered an injury in fact because of vague allegations that the trackers linked his searches to his identity or that the technologies involved "the planting of persistent tracking identifiers 'enabling ongoing cross-site surveillance'; 'the loss of control over his personal information and the diminution of its value'; 'the nullification of his expressly stated tracking preference, registered on every visit'; and 'distress, lost privacy, and a chilling of his willingness to communicate freely.'" (See Opposition at 6 – 7; citing FAC ¶¶ 35, 36, 63). But none of these allegations rise to the level of describing a cognizable injury-in-fact because they still fail to allege that embarrassing, invasive or private information about him was revealed.

First, Plaintiff argues that the trackers allegedly "linked" the search terms he entered to Plaintiff's identity. *See e.g.*, Opposition at 6 (describing Meta and LinkedIn's identity resolution devices, as alleged in FAC ¶¶ 63(b) 35, 36). Contrary to his argument, Plaintiff's allegations do in fact fail to state, with facts, that these entities actually fully identified him because (a) his allegations as to these claims are entirely conclusory based on the capabilities of the tracking devices (i.e., the allegations are of the type that "they identified me because they had the technology [and] had the ability to do so") and (b) they do not state with specificity what specific elements of his "identity" were revealed, other than perhaps his first name and his general location in California.

For example, based on the manner in which Plaintiff describes the functioning of these technologies, then in order to allege with facts that Meta and LinkedIn fully identified him through his use of Meta and LinkedIn accounts, he ostensibly would have to allege that he had Meta and LinkedIn accounts in the first place, that these accounts contained sensitive, personally identifying information about him and that there was a sufficient amount of information provided both in his searches and in his social media accounts to

link the two. But Plaintiff does not allege these things with facts; he merely states, in conclusory terms, what the technologies are capable of doing (although apparently not with certainty)[2] and then concludes that these entities were able to do the same with him. *See e.g.,* FAC at ¶ 63. Indeed, Plaintiff does not allege facts, for example, that would suggest an *actual* link between the tracking and the advertising efforts he describes the tracking as being used for—such as if he started receiving advertising concerning the searches he conducted. *See e.g., Doe I v. Google LLC,* 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) ("[I]nstead of offering factual allegations about how the plaintiffs' various providers are *actually* using Google's products, the plaintiffs allege hypothetical examples—based on the generic product descriptions—of how various product features could be used in ways that could result in privacy violations.") (emphasis in original). Plaintiff's vague and conclusory allegations about identification are insufficient to support the standing analysis. *See e.g., Kishnani v. Royal Caribbean Cruises Ltd*., No. 25-cv-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) ("And though Plaintiff alleges that Defendants *could* gain 'additional information about [a] visitor such as name, date of birth, and address,' and that allegation *could* intrude on Plaintiff's right to privacy, he fails to convert that hypothetical into a concrete harm to him.") (emphasis in original).

But even if Plaintiff did provide, with facts, further detail regarding what elements of his "identity" were revealed, this still does not necessarily implicate any protectible privacy interests. For example, in *Popa*, the plaintiff alleged "over 30 different categories" marking certain elements of the Plaintiff's identity, including *text inputted by the plaintiff on the website* as well as the plaintiff's mailing address with the street number and zip code. *See Popa,* 153 F.4th 784, 786-87 (9th Cir. 2025) The Court held that this information was insufficient to demonstrate that plaintiff had an identifiable privacy interest to support standing. *Id.* at 791 ("Popa identifies no embarrassing, invasive, or otherwise private information collected by [the tracking technology."). Likewise, the revelation of other

[2] *See e.g.*, FAC at ¶ 36 (describing that LinkedIn advertises its identifying capabilities based on "probabilistic match").

general identifying information, such as phone number and email address have been held insufficient. See e.g., *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025) (basic identifying information such as IP addresses and "such relatively quotidian private information as an email address" does not "bear similarity to the 'highly offensive' interferences or disclosures that were actionable at common law.").

Second, Plaintiff's apparent focus on the linking of the search terms to him through his first name (*see e.g.*, Opposition at pp. 6-10) misses the mark when it comes to the standing analysis because it is ***the substance*** of the information and the manner in which it invades a privacy interest ***about Plaintiff*** that determines whether a privacy interest has been implicated, not just that a person has been identified by certain factors and that generic information they searched for has been collected. *See Wooten,* 807 F. Supp. 3d at 1145 ("the invasive nature of the information collected was crucial to [*In re Facebook, Inc. Internet Tracking Litigation*]'s holding."). Indeed, in *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402 at *2 (S.D. Cal. Feb. 23, 2026) the plaintiff alleged that he visited defendant's website to research sensitive topics related to his sexual health and that the defendant used third-party tools that captured this "sensitive" information, including the plaintiff's searches "related to genital warts and the treatment of Sexually Transmitted Infections", as well as plaintiff's navigation history, IP address and device information.. The plaintiff asserted claims under the federal Wiretap Act, CIPA, the California Confidentiality of Medical Information Act, and the California Constitution. *Id.* at *1.

Applying *Popa*, the court granted defendant's motion to dismiss for lack of Article III standing. The court held that none of the plaintiff's theories of harm rose to the level of "highly offensive" behavior because the fact that the plaintiff merely *searched* sensitive health-related terms did not itself reveal the details of plaintiff's individual health status or medical history. 2026 WL 497402, at *5. The *Maghoney* court analogized that anyone from a "schoolteacher writing a lesson plan for a sex-ed class or a researcher looking to analyze potential findings" could enter similar searches into an informational health website." *Id.*

The same is true here. Although Plaintiff contends now he was conducting searches about financial institutions and their high-ranking executives for "financial and business research," there is nothing about the bare search terms that provides any context whatsoever to the searches and certainly nothing that reveals anything personal or embarrassing about Plaintiff. Like in *Maghoney*, anyone from a schoolteacher writing a lesson plan for a business class or a researcher looking to analyze certain financial institutions could be using these search terms. And given the public nature and general newsworthiness of some of the largest and most well-known financial institutions and persons in the world, there is an incalculable number of persons who could search these terms and an equally vast number of non-private reasons why they were searching them.

Here, Plaintiff alleges no sensitive medical or financial information that was disclosed. At best, he tries to characterize his generic inquiry into the financial firms as "financial research data" which he claims *can* be a protected privacy interest. *See* Opposition at p. 4 (citing *Garcia v. Truist Fin. Corp.,* 825 F. Supp. 3d 1149 (C.D. Cal. 2026)). But *Garcia* does not at all support Plaintiff's position. There, a plaintiff who applied for a loan at the defendant financial institution alleged that it permitted information about his citizenship, housing status, and employment information to be transmitted to a third party (via LinkedIn's "Insight" Tag) without his consent. *Id.* at 1157. Plaintiff also concretely alleged that the third-party linked this information to his actual LinkedIn account where he input his full name as part of establishing it. *Id.* at 1161. The situation here is nothing like *Garcia.* Indeed, Plaintiff's searches are so barren and stripped of context that they reveal absolutely nothing about Plaintiff or his finances, much less his citizenship, housing status or employment information. Instead, Plaintiff's searches are completely generic and as they span across 7 different institutions, they don't even suggest, for example, that Plaintiff even has accounts with these institutions. Simply put, there is no sensitive, embarrassing or invasive information that has been revealed. Knowing that Plaintiff is generally interested in public companies because a third-party may have

observed him search these terms on the internet is no more personal than knowing that Plaintiff sat on a park bench reading the financial section of a newspaper.[3]

Perhaps sensing the limitations of his generic terms in trying to manufacture a claim—and apparently trying to create a claim that is more akin to that in *In re Facebook, Inc. Internet Tracking Litig.,* which held that cross-internet tracking *could* relate to a protectible privacy implication because the tracking occurred "'no matter how sensitive' or personal users' browsing histories were"[4]—Plaintiff here ostensibly tried to manufacture a privacy interest by alleging that the technologies collected various metadata and had the ability to create "profiles" of him. (See e.g., FAC ¶¶ 35; 36; 38; 43; 53–56). But this appears to be a similar tactic (or an extension of it) that Judge Hwang rejected in the *Talentbridge* matter where the Plaintiff alleged that "the requests to Google Analytics and UserWay were accompanied by or associated with contextual information sufficient to tie the disclosed search-bearing page location to Plaintiff's browser, device, session, timestamp, referrer, page view, or other digital profile data" (citing FAC). Judge Hwang held that in response to these allegations "courts have routinely concluded there is no protective privacy interest over [] metadata that is voluntarily turned over to third parties." *See Vivek Shah v. Talentbridge, Inc.,* No. 2:26-cv-00222-AH-SSCx, 2026 WL 1507888 at *3, n.7 (C.D. Cal. May 28, 2026), *appeal docketed*, No. 26-3514 (9th Cir. June 1, 2026).[5]

---

[3] To be sure, if the search terms Plaintiff used were so private and sensitive, then Plaintiff ostensibly would not want to reveal them in a publicly available lawsuit and would have instead sought to file his FAC and/or Opposition papers under seal. It is telling he did not seek this relief.

[4] 956 F.3d 589, 598 (9th Cir. 2020).

[5] Plaintiff takes issue with the fact that he has appealed the *Talentbridge* matter and Defendant did not intially note that the Court's decision was on appeal. Plaintiff apparently believes that simply appealing a matter creates some sort of presumption that the appealed order is incorrect. It does not, and in fact, it is the opposite: there is a presumption that a final lower court order is enforceable unless and until an affirmative showing of error is made on appeal. *See e.g., Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) "The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal...."

But even if the technologies created a "profile" of Plaintiff, Plaintiff does not elaborate what kind of information that would be included in this profile and, more importantly, how this information implicates a protected privacy interest. At best, the allegations of Plaintiff's FAC would appear to suggest the inference that the third-party trackers had the ability to understand that a user with an IP address originating from California visited Defendant's website and—for an unknowable number of reasons—searched for the names of large, public financial institutions and the name "Vivek". In other words, the third parties would be able to understand that the internet user (whom perhaps they had a "profile" of and identified through some limited characteristics) had some sort of interest in these companies and their persons. But this is no different (in fact, it is arguably less intrusive) than the situation that was rejected by the Ninth Circuit in *Popa* where the plaintiff alleged that the website used session-replay technology that recorded plaintiff's navigation of the defendant's website and which at most "gathered her pet-store preferences and her street name." *Popa*, 153 F.4th at 791. Indeed, like Plaintiff here who offers vague notions of information that the technologies could capture in addition to the generic search terms, the *Popa* court held that "[t]o the extent [the] tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information), [plaintiff] does not plausibly allege the infringement of any such privacy interest." *Id.* (emphasis in original).

Similarly, Plaintiff attempts to bolster his claim by alleging that the tracking technologies had the ability to track him across other websites. *See* e.g., Opposition at 5. But even if this were true, Plaintiff, again, does not identify ***what protected privacy interests*** are implicated by this purported tracking. Do the technologies simply have the ability to know which other sites on the internet Plaintiff visited? Do they have the ability to understand Plaintiff's activity on those websites? Did they track his search terms on those sites? Even if they were able to track the search terms, did those terms involve, for example, sensitive medical or financial information? Were they the same generic search terms Plaintiff used here or other generic terms that have been held insufficient? Without

concretely identifying a specific protected privacy interest, Plaintiff's vague and conclusory allegations are insufficient. *See e.g., Torres v. Seatgeek, Inc*., No. 25-CV-07118-LB, 2026 WL 1495202, at *3 (N.D. Cal. May 28, 2026) (finding no concrete injury and thus no standing where the plaintiff made the same kind of generic cross-internet tracking, profiling and deanonymizing allegations that Plaintiff makes here); *Khamooshi v. Politico LLC,* 2025 WL 2822879, at *3 (N.D. Cal. 2025) ("[a]bsent specific allegations about the type of browsing and geolocation information disclosed, these categories of information are insufficient to support a concrete privacy injury.") (distinguishing from *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) where the court found a protectable privacy interest in "cradle-to-grave profile" of users' browsing activity across third-party websites combined with their Facebook profiles); *see also Schallert v. Laird Superfood, Inc.,* No. 2:25-CV-12407-SPG-PVC, 2026 WL 1707585, at *6 (C.D. Cal. June 5, 2026) (holding that CIPA standing analysis equally applies to intrusion upon seclusion claims, which requires plaintiff to "allege facts showing that he personally suffered a highly offensive intrusion upon his private affairs.").[6]

## II. <u>PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER RULE 12(B)(6).</u>

### A. <u>Search terms are not a communication's "content" when they are the same as the addressing information.</u>

In *In re Zynga Priv. Litig.*, the Ninth Circuit noted that "[u]nder *some* circumstances, a user's request to a search engine for specific information *could* constitute a communication such that divulging a URL containing that search term to a third party *could* amount to disclosure of the contents of a communication." 750 F.3d 1098, 1108-09 (9th Cir. 2014) (emphasis added). It did not hold that *any* or *all* search terms would necessarily constitute "content" and it expressly held that a URL which merely provides the address

[6] In fact, the allegations in *Torres* went a step further because the plaintiff there alleged that he did in fact have social media profiles relating to the trackers and that he received targeted advertising on those social media platforms. 2026 WL 1495202, at *1.

of the website visited does not constitute content because it is "basic identification and address information." *Id.* Indeed, *Zynga* recognized that in similar cases involving mail, courts have held that the outside of an envelope constitutes non-protected addressing information while the inside of the letter could be "content." *Id.* at 1108. But Defendant does not argue that search terms are categorically precluded from being content; rather, it is a determination that must be made on an individualized basis—the absence of which could lead to absurd results. Indeed, the inside of an envelope that says "John Smith" is no more of a "communication" than the outside that is addressed to John Smith at 123 Main Street. The point here is that Plaintiff's search terms are *so basic* that there is little reasoning to distinguish between Plaintiff's entering of "Large Bank A" into the search bar of a website (which Plaintiff argues is content) and www.LargeBankA.com, which *Zynga* holds is not (and which Plaintiff would appear to agree with).

**B. Plaintiff has not alleged an intrusion upon a private matter or seclusion.**

The tort of intrusion upon seclusion requires Plaintiff to show an "intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, *of a kind that would be highly offensive to a reasonable man."* Popa 153 F.4th 784 at 791 (9th Cir. 2025) (citation omitted) (emphasis added by *Popa* court). Throughout his Opposition, Plaintiff focuses on this latter element by claiming the third-parties continued tracking of his activity even after he purportedly opted-out through interactions with Defendant's privacy notice. But Plaintiff must prove both elements, not only that the conduct is "highly offense" but also that there was an unjustified inquiry into a private matter in the first place. As in *Popa*, and as described throughout, Plaintiff simply does not identify any "embarrassing, invasive or otherwise private information" collected. His claim thus fails as a matter of law.

DATED: July 20, 2026 **KJC LAW GROUP, A.P.C**

By: */s/ Kevin J. Cole*
Kevin J. Cole, Esq.

*Attorneys for Defendant*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant, certifies that this memorandum complies with the Court's June 2026 Standing Order requiring Reply memoranda not to exceed 10 pages.

By: */s/ Kevin J. Cole*
Kevin J. Cole, Esq.

**CERTIFICATE OF SERVICE**

I certify that on July 20, 2026, I electronically filed the foregoing document(s) with the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: */s/ Kevin J. Cole*
Kevin J. Cole, Esq.